CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 1 2 2020

JULIA C. DUDLEY, CLERK
BY: _W. Sloole_
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

DAVID P.,[1]      )
           )
  Plaintiff     )
           )
v.           )  Civil Action No. 7:18-CV-616
           )
ANDREW SAUL,    )  By: Hon. Michael F. Urbanski
Commissioner of Social Security, )  Chief United States District Judge
           )
  Defendant    )

### MEMORANDUM OPINION

  Plaintiff David P., ("David") filed this action challenging the final decision of the Commissioner of Social Security denying his claim for a period of Disability Insurance Benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 401-433. In his motion for summary judgment, ECF No. 12, David argues that the administrative law judge ("ALJ") erred by failing to adequately explain the treatment of the medical opinions in the record and that the Appeals Council erred when it declined to consider relevant, material evidence. The Commissioner responded in his own motion for summary judgment, ECF No. 16, that substantial evidence supports the denial of disability benefits and that the Appeals Council properly declined to consider the additional evidence.

---

[1] Due to privacy concerns, the court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United states that courts use only the first name and last initial of the claimant in social security opinions.

As discussed more fully the below, the court finds that substantial evidence does not support the ALJ's determination to accord only "some" weight to the opinion of David's examining physician about the effect of his impairments on his physical abilities. The court further finds that the Appeals Council erred when it declined to consider the additional evidence offered after the ALJ hearing. Accordingly, David's motion for summary judgment is **GRANTED**; the Commissioner's motion for summary judgment is **DENIED**; the ALJ's determination that David is not disabled is **VACATED**; and this case is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

## I. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

Nevertheless, remand is appropriate when the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636-637 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"). See also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## II. Claim History

David was born on January 19, 1966, graduated from high school, and attended college for one year. R. 218, 222. His past relevant work includes working as an assembly packer-tester in a lighting business and as a loom fixer in the textile industry. R. 222. David filed an application for DIB on May 22, 2014, alleging an onset date of April 20, 2013. R. 102, 194-197. He alleged disability based on a back injury and his status post lumbar spinal fusion. R.

102. His reported symptoms include back pain, stiffness, and soreness; pain down his left leg, and difficulty sleeping secondary to pain. R. 246, 105.

The application was denied at the initial and reconsideration levels of review. R. 126-128, 135-137. On April 11, 2017, ALJ Geraldine H. Page held a hearing to consider David's claim. David was represented by counsel and a vocational expert also testified. R. 78-101.

On July 19, 2017, the ALJ rendered an opinion finding David not disabled, applying the five-step evaluation process described in the regulations.[2] R. 44-58. The ALJ first found that David last met the insured status requirements through June 30, 2019 and that he had not engaged in substantial gainful activity during the period since April 20, 2013, his alleged onset date. The ALJ further found that David had the following severe impairments: degenerative disc disease status post lumbar spine fusion in 2013; history of discectomy in 2012; and obesity, but that none of the impairments or combination of impairments met or medically equaled the severity of a listed impairment. R. 49.

---

[2] The ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1, or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first three steps and the burden shifts to the Commissioner on the fifth step. Id.

The ALJ then found that David had the residual functional capacity ("RFC") to do light work as defined in 20 C.F.R. § 404.1567(b), except that he could lift and carry twenty pounds occasionally and ten pounds frequently and frequently lift, carry, push or pull objects weighing up to ten pounds. He could walk off-and-on for no more than about six hours during an eight-hour workday, stand off-and-on for no more than about six hours during an eight-hour workday, stand or walk for a total of about six hours during an eight-hour workday, and sit for approximately six hours during an eight-hour workday. He could stoop occasionally. R. 49-56.

The ALJ next found that David could not return to his past relevant work, but that he could do the work of a cafeteria attendant, delivery router, or electrical equipment assembler and that such jobs exist in significant numbers in the national economy. Thus, the ALJ found David not disabled. R. 56-58.

## III. Evidence

### A. Medical Records

On February 28, 2011, David injured his back at work while moving a fifty-pound light fixture. He was treated conservatively with medication and physical therapy without relief. An MRI showed stenosis from a disc herniation between L4 to S1. R. 462-465. On January 16, 2012, he underwent a microdiscectomy on the left at L5-S1. R. 564-565.

After surgery, David continued to experience pain in his back and left leg. He went back to work and his pain became worse. R. 285. A November 2012 lumbar spine MRI showed post-laminectomy changes at L5-S1 on the left, with no new disc protrusions or spinal

stenosis. R. 289. A CT scan of his lumbar spine showed mild degenerative disease, but the radiologist was unable to elicit a pain response on any of the three injected levels. R. 290.

David saw James Leipzig, M.D., in January 2013, who noted that he continued to have a lot of pain in his back and left leg. A discography demonstrated concordance at L5-S1, probable L4-L5. An X-ray showed advanced narrowing at the L5-S1 disk. Dr. Leipzig diagnosed David with discogenic low back pain at L5-S1 and a degenerative L4-L5 segment. Dr. Leipzig commented that there was no procedure that would give David complete pain relief and that a good outcome would be a fifty to seventy-five percent reduction in pain. R. 309-310. On April 23, 2013, Dr. Leipzig performed spinal fusion surgery on David at L4-L5 and L5-S1. R. 311-314.

In August 2013, David began a course of physical therapy. He reported that he continued to have pain in his back and left leg. His sleep was disrupted because of pain and he woke up stiff and sore. He had difficulty twisting and bending and would get on his knees to load and unload the washer and dryer. He had trouble sitting for more than thirty minutes, could stand for ten to fifteen minutes, and could walk approximately one mile on level ground. Car transfers and bed mobility were significantly difficult due to rotation. He also had trouble pushing in the clutch on his car. R. 347.

The physical therapist observed that David had significant active range of motion impairments and often used his thoracic spine to accomplish the range of motion. He had moderate strength impairments with the right weaker than the left although he reported pain on the left. He had an antalgic gait and presented with neural tension of the bilateral lower

6

extremities as well as significant hamstring tightness. R. 348-349. Physical therapy was discontinued in October 2013 when David reported that he was stiff and sore and the drive to therapy caused him a great deal of pain. R. 324-326. David reported to Dr. Leipzig that the therapy made him stronger, but he still had pain with prolonged driving or walking. R. 372.

David was referred to Murray Joiner, M.D., a pain specialist, in August 2013. He reported dull low back and gluteal pain that radiated to his toes on the left side. He had trouble sleeping and was very stiff in the morning. He reported increased pain with sitting or standing for prolonged periods, walking, and most activities. R. 433.

Dr. Joiner treated David for pain through at least November 2017. In January 2014, Dr. Joiner noted that David had an annular tear at L3-4 and chronic left lower extremity pain and dysthesias and was at maximum medical improvement. R. 424-425. In April 2014, David reported pain in his back and left leg as achy, radiating, and burning. It was worse with driving and twisting and bending motions as well as sitting for long periods, but better with frequent changes in position and mild activity. R. 67. In October 2015, David continued to report pain. A modified sitting straight leg test was negative bilaterally and there was no SI tenderness to palpation. His cranial nerves II-XII were grossly intact and his deep tendon reflexes were 2+/4. His sensory exam was intact and his strength was +5/5 throughout. R. 64-65.

In January 2014, David underwent a functional capacity evaluation (FCE) done in accordance with the United States Department of Labor's classification of work. The evaluator determined that David could work at the "light-medium" physical demand level. His material handling ability was between seven and eighty-five pounds, depending on the type of lift or

activity he was performing. It was noted that he had a high pain profile but did not demonstrate inappropriate illness behaviors. He fatigued easily and appeared physically debilitated or deconditioned. He could stand and walk between thirty-three and sixty-six percent of the day and sit up to sixty-six percent of the day. It was determined that he could not return to his work at the lighting factory. R. 403-406.[3]

In March 2017, David saw Robert Stephenson, M.D., for an evaluation. Dr. Stephenson reviewed David's medical history, including his two back surgeries, the physical therapy, and other conservative modalities with which he had been treated. Dr. Stephenson noted that David complained of constant lower back pain with significant pain in the morning. Mild activity brought some pain relief, but with prolonged or greater activity during the day he noted increasing low back and lower extremity pain on the left. Walking less than thirty minutes on even ground helped his pain, but longer periods of walking aggravated his pain. Sitting in a recliner helped, but sitting upright in a chair made the pain worse. He could navigate stairs using a handrail at times. Frequent position changes helped the pain, and he could drive for thirty to forty-five minutes before needing to stop and walk around. R. 770-771.

On examination, David moved slowly and stiffly about the exam room, but had a normal gait and did not use an assistive device. He had mild diffuse tenderness across his low back area with moderate muscle tightness. His range of motion in his thoracolumbar spine

[3] The ALJ gave very little weight to this rating, explaining that the United States Department of Labor and the Social Security Administration use fundamentally different processes to determine disability and thus a disability rating by the Department of Labor is of little probative value in a social security disability determination. R. 56.

showed seventy degrees forward flexion with ten degrees extension and fifteen degrees each of lateral bending. His hips showed a good range of motion without pain and straight leg raising was negative in both legs. He had full range of motion of all joints in his lower extremities without pain. Motor and sensory examination were intact in all four extremities. He had normal heel and toe standing and was able to squat, although with increased low back pain and with difficulty resuming a standing position. R. 771-772.

Dr. Stephenson's impression was chronic low back pain status post failed lumbar discectomy with subsequent two-level lumbar fusion, and he noted residual left lower extremity radiculopathy. He found David's prognosis to be poor for improvement, given his extensive treatment, and found that his subjective symptoms were commensurate with the objective findings.

Dr. Stephenson believed David could stand and walk up to two hours in an eight-hour workday with normal breaks. He could sit for only one hour in an upright chair in an eight-hour workday. He could lift or carry up to ten pounds occasionally from waist level or higher, but could do no floor-to-waist lifting. He could rarely bend, stoop, or crouch and should never climb ladders. Driving should be limited to 30-45 minutes. R. 772.

**B. Hearing Testimony**

At the hearing held on April 11, 2017, David testified that his alleged onset date of April 20, 2013 was the last day he worked. He stated that he could walk for about twenty minutes and sit for twenty to thirty minutes before needing to sit in his recliner or lie down on the couch. He could lift ten or fifteen pounds. He sometimes used a cane although it was

not prescribed by his doctor. R. 82-83. Although the FCE showed that he could do light to medium work, he was unable to return to work at the lighting factory because that job required him to stand for eight hours and bend and twist. R. 84. Also, after he gave his best effort for the FCE, he was exhausted and in pain for three days. R. 88.

David always has pain in his left leg and when it is bad, the pain radiates to his toes. He occasionally has pain in his right leg. R. 88-89. He never sleeps well and is usually up two or three times during the night because of pain. About half the days out of a month he does not leave the house because of pain. R. 89.

On a typical day he wakes up very stiff and sore and it takes him some time before he can get straightened out and begin his day. He does light housework, such as washing dishes, and laundry, with breaks. He tries not to drive more than 30 minutes or stay in the store for too long because he starts to hurt. He has about 3 good hours each day when he can move around, but by evening he is in pain. He had reported to the Social Security Administration that he could sometimes walk a mile, but he could no longer do that. R. 85-86. He has mowed his yard using a riding mower, but usually his brother does it for him or he hires someone to do it, because he has to take breaks while someone else can get it done in twenty to thirty minutes. R. 86-87. David's mother does most of his housework, including sweeping and mopping, because he cannot do those things. R. 91.

The vocational expert (VE) testified that if a person of the same, age, education, and experience as plaintiff were limited to lifting and carrying no more than ten pounds, and occasionally five pounds, could stand and walk no more than two hours in an eight-hour day,

sit for no more than six hours in an eight-hour day, push and pull occasionally, never crawl, be exposed to hazardous machinery, work at unprotected heights, climb ladders, ropes, or scaffolds, or work on a vibrating surface, and occasionally climb ramps and stairs, balance, kneel, stoop, or crouch, would need to change posture between sitting and standing at his work station, and drive less than thirty-five minutes at a time, he would not be able to return to his prior work. He also would have no skills transferable to skilled or semi-skilled work. R. 94-95.

If the person were considered a young person, being 47 years old at his alleged onset date, he would be able to do several sedentary occupations, with jobs existing in significant numbers in the national economy. R. 95-96. If the person could lift only ten pounds from the floor to his waist, he still would be able to do sedentary work. R. 97.

If the person could lift twenty pounds occasionally and ten pounds frequently, stand and walk for six hours and sit for six hours with the other described limitations, he would not be able to return to David's past work, but could do light work, with jobs existing in the national economy. R. 96. If the person were limited to lifting or carrying up to ten pounds on an occasional basis from the waist up, could never lift from the floor to the waist, and could only rarely bend, stoop, or crouch, it would eliminate the light work jobs, but would not affect the sedentary jobs. R. 98-99.

If the person would be off task eleven to twenty percent of the day because he needed to lie down or recline, he would not be able to work in the national economy. R. 97. Generally,

a person can be off task at most ten percent of a workday, and can miss up to a day-and-a-half each month before he will be terminated. R. 99-100.

## C. Medical Opinion Evidence

State agency physicians Richard Surrusco, M.D., and R.S. Kadian, M.D., assessed David's RFC, finding that he could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand, walk, or sit for a total of six hours; push and pull without limitation; occasionally climb ramps or stairs, never climb a rope, ladder, or scaffold, occasionally stoop, kneel, crouch, or crawl, and frequently balance. He needed to avoid concentrated exposure to vibration and even moderate exposure to hazards such as machinery and heights. R. 108-110, 120-122.

## IV. Analysis

David raises two arguments. First, he asserts that if Dr. Stephenson's opinion regarding his limitations were fully credited and adopted by the ALJ, it would have warranted a finding that he was disabled. The ALJ, however, gave Dr. Stephenson's opinion only "some" weight, while giving "great" weight to the opinions of the State agency consulting physicians. David argues that the ALJ did not properly consider Dr. Stephenson's opinion and did not adequately explain her decision to give his opinion only "some" weight.

Second, David asserts that the Appeals Council failed to properly consider new relevant material evidence, consisting of updated medical records from Dr. Joiner. David asserts that the records created prior to October 2015 show consistent complaints of pain and a reduced range of motion. He further asserts that the records created in 2017 document findings of

decreased range of motion upon examination, decreased lumbar lordosis, pain along the L2-S1 facets bilaterally, and mild spasm in the lumbar paraspinals and bilateral quadratus lumborum muscles. David argues that it was error for the Appeals Council to not to consider the evidence.

## A. Opinion of Examining Physician

In general, an ALJ must accord more weight to the medical opinion of an examining source than to that of a nonexamining source. Testamark v. Berryhill, 736 Fed. Appx. 395, 387 (4th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) and Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017)). Treating sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. Id. (citing Woods v. Berryhill, 888 F.3d 686, 695 (2018)). "[T]he ALJ is required to give controlling weight to opinions proffered by a claimant's treating physician so long as the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (alterations and internal quotations omitted).[4] If an ALJ does not give controlling weight to the opinion of a treating source, the ALJ must consider a non-exclusive list of factors to determine the weight to be given all the medical opinions of record, including (1) examining relationship; (2) treatment

[4] The Social Security Administration has amended the treating source rule effective March 27, 2017, for cases filed after that date. Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency. 20 C.F.R. § 404.1520c(a), (c)(1)-(2). Because this case was filed before the effective date of the change, the decision is reviewed under the regulation in effect at that time, 20 C.F.R. § 404.1527.

relationship; (3) supportability of the source's opinion; (4) consistency of the opinion with the record; and (5) specialization of the source. Testamark, 736 Fed. Appx. at 398.

In assessing David's RFC, the ALJ first summarized his subjective complaints of symptoms and impairments, and then summarized his treatment history. R. 49-56. The ALJ found that his statements throughout the record were not fully consistent with the evidence. The ALJ stated that although David has described activities that are significantly limited, his daily activities cannot be objectively verified with any reasonable degree of certainty, and even if his activities are limited as alleged, it is difficult to attribute that degree of limitation to his medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision. R. 51.

David complains that the ALJ did not properly consider the report prepared by Dr. Stephenson, who saw him one time in March 2017. The ALJ gave Dr. Stephenson's opinion "some" weight. If she had given greater weight to the opinion, it is likely that she would have found David capable of doing less than sedentary work, which would have directed that she find him disabled. Alternatively, she would have found him capable of doing sedentary work, which, because he became an individual "closely approaching advanced age" when he turned 50 years old in January 2016, would have directed a finding of disabled under Medical-Vocational Rule 201.14 when he turned 50.

In deciding to give Dr. Stephenson's opinion about David's limitations only "some" weight, and in particular the findings that David could lift or carry only ten pounds on an occasional basis from waist level or higher, that he could do no floor to waist lifting, that he

14

could stand and walk only two hours out of an eight-hour day, and that he could sit upright only one hour out of an eight-hour day, the ALJ found that the "mild findings in the record" did not support the restrictive limitations assessed by Dr. Stephenson. R. 55. In addition, the ALJ discounted Dr. Stephenson's assessment because she found he was not familiar with the requirements of social security and did not review the evidence of record. R. 55.

David argues first that Dr. Stephenson cited to reports and findings from David's other doctors, indicating that he did review the record, R. 770, and the court finds that this is correct. Dr. Stephenson cited to records from several of David's previous doctors and his records from physical therapy.

David also asserts that Dr. Stephenson has provided opinion evidence in many social security disability proceedings, including in front of ALJ Page, and that in any case, he is a medical doctor with extensive experience in orthopedics and is capable of diagnosing David's impairments and giving an opinion of his physical limitations in light of those impairments. The ALJ cited to nothing in support of her conclusion that Dr. Stephenson was not familiar with the requirements of social security. Thus, the court finds that Dr. Stephenson was familiar with social security rules and regulations, or, in the alternative, was able to give an opinion of David's capabilities based on his own experience as a doctor.

David next argues that the ALJ's decision to only give Dr. Stephenson's opinion "some" weight to the extent it was consistent with the medical evidence, but otherwise discount his opinion in light of the "mild findings in the record," is inadequate in light of Monroe, 826 F.3d at 190-191. In Monroe, the Fourth Circuit Court of Appeals remanded a

15

case in part because the ALJ did not include a narrative discussion describing how evidence supported the decision to give "little weight" to a consultative psychologist's opinion. The ALJ stated only that "the objective evidence of the claimant's treatment history did not support the consultative examiner's findings," but did not specify the objective evidence or the aspects of the treatment history to which he was referring. Id. at 191.

A review of the ALJ's decision in this case indicates that she described the "mild findings in the record," and particularly described Dr. Stephenson's "mild findings" that David moved stiffly and slowly but with a normal gait, his spine was straight with normal alignment, the straight-leg test was negative, he had full range of motion in both lower extremities without pain, his motor and sensory examination and deep tendon reflexes were intact, and he was able to squat with some difficulty. R. 52. However, the court finds that the evidence in the record does not undermine Dr. Stephenson's conclusion that David could stand and walk only two hours out of an eight-hour day and sit upright only one hour out of an eight-hour day.

First, the ALJ stated that the record was devoid of evidence showing a significant degree of nerve root compression, cord compression, gait disturbance, significant reduction in the range of motion in the spine, radiculopathy, scoliosis, lordosis, disc bulging, herniation, disc protrusion, neural forminal narrowing, spinal stenosis, arachnoiditis, spondylolisthesis, or other indication of a disabling spine issue during the relevant time period. R. 53. But the physical therapist, whose report was not discussed by the ALJ, noted that David had significant active range of motion impairments and often used his thoracic spine to accomplish the motion. She also noted an antalgic gait. R. 348-349. In addition, Dr. Joiner diagnosed David

16

with an annular tear at L3-4, also not mentioned by the ALJ, and observed that he had decreased lumbar lordosis. R. 425. Accordingly, the record does contain evidence showing significantly reduced range of motion, a gait disturbance, and evidence of a disc bulge, all of which lend support to Dr. Stephenson's opinion of David's limitations.

Second, the ALJ discredited David's description of his daily activities, finding that while some of them could be attributed to severe, medically determinable impairments, others "were adopted as a matter of convenience to the claimant." R. 51. She opined that impairments that impose exceptional functional limitations leave a footprint in the treatment record, either by the claimant discussing the symptoms with a healthcare provider, or in the form of clinical observations, test results, or imaging. Id.

The record shows that in October 2013, several months after the spinal fusion surgery and after the alleged onset date, David told the physical therapist that he could sit for only thirty to forty-five minutes before becoming extremely stiff and hurting, and could stand for only twenty to thirty minutes before feeling pain across his back and into his left leg. R. 325. The physical therapist noted that David's flexibility, strength, and range of motion were all limited. Id. David reported pain with prolonged standing or walking to Dr. Leipzig in November 2013 and February 2014. R. 372, 377. He complained of pain with activity and when sitting for a prolonged time to Dr. Joiner when he saw him in August and October 2013, January and April 2014, and October 2015. R. 70, 421, 424, 427, 433. Thus, the record shows that David's impairments did "leave a footprint" in the treatment record, and that the footprint is consistent with the limitations found by Dr. Stephenson.

Finally, where the ALJ did find David's allegations credible, she also found that his daily activities were not as limited as one would expect given his allegations of disabling pain. She cited his testimony that he takes care of his personal care needs and does some chores such as dishes and laundry, and that he drives, shops in stores, and takes daily walks, although not as much as he did in the past. R. 54. However, David testified that he can walk for up to twenty minutes at a time and that when he washes dishes he often has to stop and take a break. R. 85, 90. When he goes to the store, he tries not to stay too long because it causes him pain. R. 85-86. The activities David describes are consistent with Dr. Stephenson's opinion that David cannot stand or walk for more than two hours in a day.

In Brown v. Commissioner Social Security Administration, 873 F.3d 251, 269 (4th Cir. 2017), the Fourth Circuit remanded a case in part because the ALJ listed a claimant's daily activities of cooking, driving, doing laundry, collecting coins, attending church, and shopping, but did not acknowledge the limited extent of the activities or explain how the activities showed he could sustain a full-time job. See also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)) (observing that it is not enough for an ALJ to state in a conclusory manner that a claimant's testimony regarding limitations placed on his daily activities was unsupported by the medical evidence; rather, an ALJ must articulate "some legitimate reason for his decision" and "build an accurate and logical bridge from the evidence to his conclusion.")

The court here finds that the ALJ failed to "build a logical bridge" from her observations of David's daily activities to her conclusion that Dr. Stephenson's opinion was

18

only entitled to "some" weight. The court further finds that the ALJ's decision to discount Dr. Stephenson's conclusions based on "mild findings" in the record is not supported by substantial evidence. Although the ALJ included a narrative discussion of objective evidence in the record, her discussion omitted relevant evidence that supported Dr. Stephenson's conclusions. Thus, the court concludes that the ALJ's determination to give Dr. Stephenson's opinion only "some" weight is not supported by substantial evidence.

### B. Consideration of Additional Evidence

In Wilkins v. Sec'y Dep't Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991), the Fourth Circuit held that "[t]he Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). In addition, there must also be a reasonable probability that the additional evidence would change the outcome of the decision and a claimant must show good cause for not submitting the evidence at least five days before the ALJ hearing. 20 C.F.R. §§ 404.970, 416.1470.

Evidence is considered new if it is not cumulative or duplicative of evidence already in the record. Wilkins, 953 F.2d at 96. Evidence may relate back to the period before the ALJ's decision even if it postdates the decision. Norris v. Colvin, 142 F.Supp.3d 419, 422 (D.S.C. 2015).

After the ALJ hearing, David submitted additional medical records to the Appeals Council, consisting of records from Dr. Joiner from April 28, 2014, October 9, 2015, October

19

23, 2015, R. 63-75, and also from August 25, 2017, September 15, 2017, November 10, 2017, November 15, 2017, and November 18, 2017. R. 16-40. The Appeals Council did not consider the evidence from 2014 and 2015 because it found that the evidence did not show a reasonable probability that it would change the outcome of the decision. R. 2. Regarding the evidence from 2017, the Appeals Council found that because the ALJ decided the case through July 19, 2017, the evidence did not relate to the period at issue. Id.

David argues that the evidence is new and that he has shown good cause for not submitting it earlier, because he sent three letters to Dr. Joiner's office seeking the records but did not receive them until 2018. R. 274. Regarding the 2014 and 2015 medical records, the April 28, 2014 record had already been submitted, R. 67-68, 421-423, so it was not new. The October 9, 2015 record was new, but the notes of the spinal exam, neurologic exam, and Dr. Joiner's impression were identical to his finding on April 28, 2014. Moreover, David reported to Dr. Joiner on October 9, 2015 that his pain was unchanged since his last visit in 2014 and that as long as he took his medication and watched his activity level, he could keep the pain pretty well controlled. Although this evidence is new, and he showed good cause for not submitting it earlier, it is not probable that this record would have changed the ALJ's decision.

The document from October 23, 2015 noted that David had pain over the paravertebral muscles of his lumbar spine and had pain over the facet joints bilaterally with deep palpation. A modified sitting straight leg raise was negative bilaterally and he had no SI joint tenderness to palpation. His neurologic exam was essentially the same as the one done the week earlier and the one done in April 2014. R. 64-65. The impression was that David has

lumbosacral pain and spasms, post-laminectomy syndrome, radiculopathy pain, primarily in the left lower extremity and occasionally in the right, and facet syndrome. R. 65. He was informed of the disadvantages of bedrest and the need to remain as active as possible. Id. This record differs from the earlier records in that the diagnosis includes radiculopathy pain and facet syndrome. This record is new, and material in that it includes different diagnoses which are consistent with David's complaints of chronic pain. In addition, David presented good cause for not having submitted it earlier in that he made multiple requests to the doctor's office for the record but did not receive it until after the ALJ hearing. Thus, the Appeals Court erred when it did not consider the record.

Looking at the records from David's visits to Dr. Joiner after the ALJ hearing, they were generated from visits he made to the doctor after the ALJ issued her decision on July 19, 2017. Nevertheless, because the records relate to David's ongoing back pain and because they were produced by Dr. Joiner, who had seen David as a patient for several years before the hearing, the court finds that the records relate back to David's claim.

The records from August and September 2017 indicate that David's condition was essentially the same, except for his having an antalgic gait. Compare R. 19 and 23 with R. 68. He also reported that Cymbalta helped some with his leg pain, and that his pain was relieved with Aleve, rest, and heat. R. 16, 21. An X-ray done on September 7, 2017 showed a tiny posterocentral disc protrusion and mild anterior disc bulge at L1-L2, minimal right forminal disc bulge and minimal anterior disc bulge at L2-L3, mild annular disc bulge and disc desiccation at L3-L4, and no disc bulge but a Harms cage at L4-L5 and L5-S1. No spinal

stenosis was noted. R. 31. The Appeals Council should have considered these records because they offer objective evidence of David's ongoing back impairment.

The November 2017 records show that David received pain relief from a trial spinal cord stimulator and plans were made for permanent placement of the device. R. 26, 29, 40. These records offer further evidence of the nature of David's back impairment. On remand, the Appeals Council should consider the evidence along with the other evidence of record.

## V. Conclusion

For the reasons stated, the Court finds the ALJ's determination to accord only some weight to Dr. Stephenson's opinion was not supported by substantial evidence. The court further finds that the Appeals Council committed error when it declined to consider the evidence David submitted after the hearing from October 23, 2015, and the records produced after the ALJ hearing. Accordingly, the final decision of the Commissioner is **VACATED**. David's motion for summary judgment, ECF No. 12 is **GRANTED**. The Commissioner's motion for summary judgment, ECF No. 16, is **DENIED**. This case is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: 02 — 12 —2020

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge